# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, BURGESS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist ISAIAH M. RICE**
**United States Army, Appellant**

ARMY 20240586

Headquarters, 21st Theater Sustainment Command
Thomas P. Hynes, Military Judge (arraignment)
Adam S. Kazin, Military Judge (motions & trial)
Lieutenant Colonel William J. Stephens, Special Trial Counsel

For Appellant: Captain Eli M. Creighton, JA; Scott R. Hockenberry, Esquire (on brief and reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Elizabeth G. Van Dyck, JA; Captain Melissa D. Zigrang, JA (on brief).

30 July 2026

-----------------------------------
SUMMARY DISPOSITION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

JUETTEN, Judge:

Appellant raises four assignments of error to this court, one of which warrants discussion but no relief.[1] Appellant alleges that the military judge abandoned his role as an impartial arbiter and became a partisan or adjunct to the prosecution. We disagree.

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of making false official statements in violation of Article 107, Uniform Code of Military Justice, 10 U.S.C. § 907

---

[1] We have given full and fair consideration to the matter personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine it warrants neither discussion nor relief.

[UCMJ].[2] The military judge sentenced appellant to a bad-conduct discharge, confinement for fourteen months, and reduction to the grade of E-1.

## BACKGROUND

Appellant was a passenger in a vehicle operated by Specialist (SPC) ▆ when SPC ▆ intentionally struck a fellow soldier following an argument off post in Kaiserslautern, Germany. During the subsequent investigation into SPC ▆ conduct, appellant provided statements to Criminal Investigation Division (CID), including that SPC ▆ stated he had struck a deer and that appellant had been asleep in the backseat of SPC ▆ vehicle when the strike occurred. These statements served as the basis for Specifications 1 and 2 of Charge II. Subsequently and unrelated to the vehicle incident, appellant presented a false quarters slip to his first sergeant, which served as the basis for The Additional Charge.

During the trial, the government called Mr. ▆, a digital forensic examiner, to testify about his report that analyzed forensic evidence from an infotainment system in SPC ▆ vehicle. Defense counsel requested an Article 39(a) hearing in which they objected to the introduction of Mr. ▆ testimony on Confrontation Clause grounds, stating that Mr. ▆ report merely analyzed the forensic evidence that another law enforcement agent collected from SPC ▆ vehicle. During the 39(a) hearing, the military judge stated, "the government has to lay its foundation before it can admit its evidence" and asked the government to explain how they intended to lay the requisite foundation.

The government informed the military judge they would attempt to admit Mr. ▆ report containing his analysis of the Global Positioning System (GPS) data found within the infotainment system of SPC FW's vehicle. The military judge stated Mr. ▆ testimony would be insufficient to lay the proper foundation because the government had failed to explain how the GPS data contained within Mr. ▆ report "got from Point A to Point B, Point B being Mr. [▆.]" The military judge informed counsel, "the defense objection at this point is sustained," but offered the parties a recess to "reassess . . . if you have any evidence that's going to establish the foundation for the GPS data retrieved from [SPC ▆] vehicle."

Once counsel returned from the recess, the government presented a modified exhibit they believed would "satisfy the court's concerns with [Mr. ▆ testimony]." After fielding arguments from defense counsel, the military judge succinctly put the issue as "whether or not Mr. [▆ can establish that the

___

[2] Appellant was acquitted of two specifications of domestic violence in violation of Article 128b, UCMJ. One specification of accessory after the fact in violation of Article 78, UCMJ, was withdrawn and dismissed before trial.

information that he did an analysis on is the same information that [another law enforcement agent] collected." The government again attempted to lay the proper foundation by questioning Mr. ███ about the alphanumeric "hash value" assigned to the infotainment system data and used to identify the evidence throughout the chain of custody process. Once counsel had concluded their questioning of Mr. ███, the military judge stated that if counsel "want[ed] a fast answer, the answer is going to be 'no'" because the government had failed to establish the alphanumeric "hash value" assigned at collection of the infotainment system data and thus could not tie Mr. ███ analysis to the vehicle in question.

After another brief recess, the government called Special Agent (SA) ███ to testify regarding the collection of the infotainment system data from SPC ███ vehicle. During SA ███ testimony, the military judge excused the panel members and conducted an Article 39(a) session because he noticed "the data from the vehicle that was analyzed . . . by Mr. [███ in some places refers to the identity of [SPC ███]," in turn causing him to wonder whether additional identifying information within the raw data might establish the identity of the vehicle and tie the data to SPC ███ vehicle, thereby resolving the deficiencies in Mr. ███ testimony. The military judge informed counsel they would "also have to talk to [SA ███] again to establish the brand of the vehicle, the model number or the serial number that's in the property custody document." The court took another recess so that "both the defense and the government [could have] an opportunity to talk to Mr. ███ outside of the court . . . ."

Once the parties returned from recess, the government informed the military judge "that there are other identifying features from the data itself that link the data analyzed by Mr. [███ to [SPC ███ vehicle]" and that SA ███ could testify to identifying information on SPC ███ vehicle and match it to the identifying features from the data itself. Defense counsel continued to lodge their original objection on Confrontation Clause grounds. At this point, the military judge opined that the government's proposed course of action would overcome the defense's objection and reminded the government of the permitted scope of Mr. ███ testimony. The government subsequently called SA ███ to establish the identifying information from SPC ███ vehicle through the vehicle identification number and recalled Mr. ███ to match the identifying information about the vehicle in the report. Mr. ███ report was admitted into evidence.

The second instance where appellant alleges the military judge assisted the government occurred during the defense's case rebutting the evidence for The Additional Charge. The government was questioning a defense expert witness about a patient excusal note he wrote for appellant. The government sought to introduce the note into evidence. The defense objected, stating, "the foundation is . . . lacking as to whether [the note] was given . . . to [appellant]." In response to the defense's objection, the military judge asked the witness, Doctor ███ two questions: (1)

"Doctor . . . did you generate this document for [appellant]?" and (2) "Did you give this document to [appellant] or did you just generate it and somebody else . . . [gave] it to him?" Doctor ▮ answered in the affirmative to the military judge's first question and responded "I was in the room when he received it" to the second question. The defense's objection was overruled, and the patient excusal note was admitted into evidence.

At no time throughout trial did counsel move to challenge or disqualify the military judge.

## LAW AND DISCUSSION

When an appellant "does not raise the issue of disqualification until appeal," the claim is examined for plain error. *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). Plain error occurs when (1) error occurred; (2) such error was plain and obvious; and (3) it materially prejudiced appellant's substantial rights. *United States v. Clifton*, 71 M.J. 489, 491 (C.A.A.F. 2013) (citing *United States v. Powell*, 49 M.J. 460, 464-65 (C.A.A.F. 1998)).

"An accused has a constitutional right to an impartial judge." *Martinez*, 70 M.J. at 157 (citation omitted). Rule for Courts-Martial 902(a) implements that right by requiring a military judge to disqualify themself "in any proceeding in which that military judge's impartiality might reasonably be questioned." "[T]he validity of the military justice system . . . 'depend[s] on the impartiality of military judges in fact and in appearance[;]'" actual bias need not be shown, since an appearance of bias is itself sufficient. *United States v. Uribe*, 80 M.J. 442, 446 (C.A.A.F. 2021) (first quoting *Hasan v. Gross*, 71 M.J. 416, 419 (C.A.A.F. 2012); and then citing *United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F 2000)).

Military judges are presumed impartial, and a party seeking to overcome that presumption faces a high hurdle. *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001). The appearance of bias inquiry is objective: under the standard of "any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *United States v. Springer*, 79 M.J. 756, 759-60 (Army Ct. Crim. App. 2020) (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982)).

However, a military judge is not expected to merely play the role of an "umpire in a contest between the Government and accused." *Quintanilla*, 56 M.J. at 43 (citation omitted). The judge may participate actively, ask questions, clarify uncertainties in the evidence, and develop facts to assist the fact finder, and may explain evidentiary requirements or the state of the record. *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995) (citations omitted). Judicial questioning does not

establish partiality merely because it touches on evidentiary issues or assists the orderly presentation of the case. *Id.* Even questioning resembling cross-examination may not require reversal where it is limited, viewed in context, and the record as a whole shows the judge remained neutral. *United States v. Foster*, 64 M.J. 331, 335-37 (C.A.A.F. 2007).

Because of this, there is a critical distinction between partisan coaching and neutral trial management. Occasional suggestions to counsel, from the military judge, "do not in themselves make the military judge a partisan advocate." *United States v. Zaccheus*, 31 M.J. 766, 768 (A.C.M.R. 1990) (citation omitted). Intervention to "prevent further fumbling and waste of the court's time on a procedural matter involving obviously relevant and admissible evidence" is permissible. *Id.*

When judicial bias is found, military appellate courts apply a two-step analysis to determine if the bias warrants reversal: (1) if the trial judge's conduct prejudiced appellant's substantial rights, and, even if not; (2) whether reversal is nevertheless warranted under the standards set forth in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988). In *Liljeberg*, the Supreme Court considered three factors when determining whether a conviction should be vacated: (1) "the risk of injustice to the parties in the particular case;" (2) "the risk that the denial of relief will produce injustice in other cases;" and (3) "the risk of undermining the public's confidence in the judicial process." *Id.*; *see also Martinez*, 70 M.J. at 159-60 (applying *Liljeberg*, 486 U.S. 847).

Appellant contends the military judge abandoned his impartial role in two respects: by outlining for trial counsel how to admit incriminating evidence and personally laying the foundation for government evidence. We disagree on both counts.

As for the claim that the military judge coached the government in how to admit incriminating evidence, the government called Mr. ▮ to introduce forensic evidence, and the military judge observed that the government had not yet established an adequate foundation. After identifying the deficiencies to government counsel that were his basis for not admitting the evidence, the military judge called a recess in order to give both the defense and the government an opportunity to talk to Mr. ▮. While the military judge explained how the government's foundation theretofore was insufficient, his doing so was consistent with his responsibility of determining whether the proffered evidence was admissible. *See* Military Rule of Evidence 104(a) ("The military judge must decide . . . [whether] evidence is admissible.").

The military judge was not coaching trial counsel on how to properly lay foundation and gave neither side any advantage or special assistance. The judge's

comments here addressed what was missing from the foundation. He did not vouch for the forensic evidence, express a view that the evidence was true, or relieve the government of presenting testimony from the witness. This form of intervention is consistent with a judge's role as an active participant in the proceedings rather than advocacy. *Zaccheus*, 31 M.J. at 768. A reasonable person knowing all the circumstances would not come to the conclusion that the judge's impartially should be questioned.

With regard to the claim that the military judge personally laid the foundation for government evidence, active participation from the military judge does not affect the public's confidence in the judicial process under the *Liljeberg* factors. The quarters slip was admitted into evidence following a sustained defense objection and two clarifying questions from the military judge. Judicial questioning does not establish partiality merely because it touches on evidentiary issues or assists the orderly presentation of the case. *Ramos*, 42 M.J. at 396. The military judge remained within the permissible bounds of judicial control over the proceedings by directly asking Dr. SG questions to prevent a "waste of the court's time on a procedural matter involving obviously relevant and admissible evidence." *Zaccheus*, 31 M.J. at 768.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MORRIS and Judge BURGESS concur.

FOR THE COURT:

JAMES W HERRING, JR.
Clerk of Court